# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| JOSEPH FOTE, Individually and on Behalf of All Others Similarly Situated, | Case No.: 20-cv-1115 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| CONVERGENT OUTSOURCING INC., | **Jury Trial Demanded** |
| Defendant. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Joseph Fote is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the debt Defendant sought to collect from Plaintiff was the result of a consumer transaction.

6. Defendant Convergent Outsourcing, Inc. ("Convergent") is a foreign business corporation with its principal place of business located at 800 Southwest 39th Street, Suite #100, Renton, Washington 98057. Its registered agent in Wisconsin is C T Corporation System, 301 S. Bedford St., Suite 1, Madison, Wisconsin 53703.

7. Convergent is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Convergent is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. Convergent is licensed as a "Collection Agency" by the Division of Banking in the Wisconsin Department of Financial Institutions pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg 74.

10. Convergent is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

**FACTS**

11. On or about August 12, 2019, Defendant mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "OneMain Financial." A copy of this letter is attached to this complaint as Exhibit A.

12. Upon information and belief, the alleged debt referenced by Exhibit A was incurred as a result of an unsecured personal loan, the proceeds of which were used exclusively for personal, family, and household purposes.

13. Upon information and belief, Exhibit A is a form letter, generated by computer and with information specific to Plaintiff inserted by computer.

14. Upon information and belief, Exhibit A is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

15. Upon information belief, Exhibit A was the first written communication that Defendant mailed to Plaintiff regarding this alleged debt.

16. The reverse side of Exhibit A includes the following representations which largely reflects the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires that debt collectors send along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume the debt is valid. If you notify this office in writing at PO Box 9004, Renton, WA 98057 within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing at PO Box 9004, Renton, WA 98057 within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

17. Exhibit A also includes the following representations:

> Our client has advised us that they are willing to satisfy your account for 40% of your total balance due to satisfy your past balance. The full reduced balance amount must be received in our office by an agreed upon date. If you are interested in taking advantage of this opportunity, call our office within 60 days of this letter. Your reduced balance amount would be $3,893.21. Even if you are unable to take advantage of this arrangement, please contact our office to see what terms can be worked out on your account. We are not required to make this arrangement to you in the future.

18. Exhibit A thus purports to make a settlement offer to the consumer whereby they may resolve their debt by payment of 40% of the total balance.

19. The remittance slip attached to Exhibit A includes the following representations:

> ✓ **Select Your Plan:**
> ☐ **OPPORTUNITY #1 - Lump Sum Reduced Balance Offer of 40%:**
> Enclosed is my payment of $3,893.21 (a 60% discount). My account is now satisfied in full.
>
> ☐ **OPPORTUNITY #2 – Reduced Balance Offer of 65% & Pay Over 3 Months:**
> Enclosed is my first payment of $2,108.82 towards the reduced balance of $6,326.47 (a 35% discount).
>
> ☐ **OPPORTUNITY #3 - Spread Your Payments Over 12 Months:**
> Enclosed is my first payment of $811.09 towards the balance due of $9,733.03.

3

20. The remittance slip attached to Exhibit A also includes the following representations:

> If Options 2 or 3 Have Been Selected, Please Enter Monthly
> Payment Date and Amount: _____ $_____

21. The terms of the purported settlement offers included in Exhibit A as "OPPORTUNITY #2" and "OPPORTUNITY #3," however, are unclear.

22. Upon reading the purported settlement offers included in the remittance slip of Exhibit A, the unsophisticated consumer would be confused as to whether "OPPORTUNITY #2" and "OPPORTUNITY #3" are actual offers to settle resolve the account or are instead ways that the consumer can make an offer to settle the account, which Convergent and/or the creditor could either accept or deny.

23. The consequences of misleading a consumer with respect to settling a debt are greater than misleading the consumer about the amount of the debt. A payment of the entire debt would leave pennies or, at most, a few dollars left over for payment later. *See eg. Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000). Due to a few remaining dollars or cents of interest, however, Convergent and/or the creditor could continue to collect the remaining balance of the alleged debt, plus any additional interest that had accrued.

24. Whether a payment would actually settle the debt is, by definition, a material term of a settlement offer and must be communicated clearly and effectively. *E.g., Nichols v. Northland Groups, Inc.*, 2006 U.S. Dist. LEXIS 15037, at *19 (N.D. Ill. Mar. 31, 2006) ("Requiring a clear statement of the settlement proposal, including the method by which the settlement amount is calculated, will not interfere with the debt collector's freedom to negotiate."); *Winiecki v. Creditors Interchange Receivable Mgmt., LLC*, 14 F. Supp. 3d 1086,

1093 (N.D. Ill. Jan. 27, 2014) ("It is not enough for a collection letter to state the elements required by the FDCPA; it must state the terms of the settlement offer 'clearly enough that [an unsophisticated consumer] is likely to understand it.") (quoting *Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944, 948 (7th Cir. 2004)); *Al v. Van Ru Credit Corp.*, 2018 U.S. Dist. LEXIS 70321, at *7-8 (E.D. Wis. Apr. 26, 2018) (in the context of settlement offers, "ambiguity itself can prove a violation.") (quoting *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 686-87 (7th Cir. 2017)); *see also, Smith v. Nat'l Enter. Sys., Inc.*, 2017 U.S. Dist. LEXIS 47701, at *13 (W.D. Okla. Mar. 30, 2017) (collection letter violated the FDCPA because "[a]ny consumer receiving the first letter would be left to wonder about a material term of the offer[.]"); *Dixon v. Law Office of J. Scott Watson P.C.*, 2018 U.S. Dist. LEXIS 18184, at *10-11 (E.D. Penn. Feb. 5, 2018) (settlement offer that specified initial installment amounts but left open the amount of later installments violated the FDCPA).

25. On or about December 2, 2019, Defendant mailed another debt collection letter to Plaintiff regarding the same alleged debt owed to "OneMain Financial." A copy of this letter is attached to this complaint as Exhibit B.

26. Upon information and belief, Exhibit B is another form letter, generated by computer and with information specific to Plaintiff inserted by computer.

27. Upon information and belief, Exhibit B is another form debt collection letter, used by Defendant to attempt to collect alleged debts.

28. Exhibit B contains the following:

NOTICE: PLEASE SEE REVERSE SIDE AS IT MAY CONTAIN IMPORTANT CONSUMER INFORMATION

29. The reverse side of Exhibit A does not contain any "IMPORTANT CONSUMER INFORMATION." Indeed, the reverse side of Exhibit B is entirely blank.

5

30. The consumer, faced with an instruction to reference "important information" on a blank page would be confused and misled, and would wonder whether she was actually provided the "important information" she was supposed to receive. *See, e.g., Papetti v. Rawlings Fin. Servs., LLC*, 121 F. Supp. 3d 340, 352 (S.D.N.Y. 2015) ("He would notice an error—a blank page where he was supposed to find "important information." And he would likely be left uncertain whether he indeed possessed whatever the "important information" was."); *Rhee v. Client Servs.*, Civil Action No. 19-cv-12253, 2020 U.S. Dist. LEXIS 127807 *17 (D.N.J. July 21, 2020) ("the last sentence in the body of the Letter states 'FOR IMPORTANT RIGHTS AND PRIVILEGES WHICH MIGHT APPLY TO YOUR STATE OR RESIDENCE PLEASE SEE BELOW OR REVERSE SIDE.' But no rights or privileges appear below this sentence or on the reverse side. ... Accordingly, the least sophisticated debtor may be confused as to whether the validation notice on the first page of the Debt Collection Letter, which appears before the direction to 'see below or reverse side,' includes all his rights or whether he was supposed to be informed of additional rights on the second page of the letter.").

31. Plaintiff was misled and confused by Exhibits A & B.

32. The unsophisticated consumer would be misled and confused by Exhibits A & B.

### *The FDCPA*

33. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp. Sols.*, No. 17-cv-1671, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018); *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-

6

CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after Spokeo, have rejected similar challenges to standing in FDCPA cases.") (citing *Hayes v. Convergent Healthcare Recoveries, Inc., 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes … do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing,

even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

34. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

35. Plaintiffs who allege that debt collectors engaged in misrepresentations in their dunning letters have standing, as such misrepresentations risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.*, 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt.*, No. 18-CV-1484, 2019 U.S. Dist. LEXIS 134377 *8-9 (E.D. Wis. Aug. 9, 2019) ("Protecting consumers from misinformation is one of the 'concrete interest[s] that Congress sought to protect,' under the FDCPA. If a consumer is misinformed, rather than merely uninformed, the risk of harm is greater.") (internal citations omitted); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount

owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

36. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

37. 15 U.S.C. § 1692e(5) specifically prohibits the "threat to take any action that cannot legally be taken or that is not intended to be taken."

38. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

39. 15 U.S.C. § 1692g(b) states, in relevant part: "Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

## The WCA

40. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

41. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

42. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

43. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

44. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

45. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and

injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

46. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

47. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

48. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

49. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct … in such a manner as can reasonably be expected to threaten or harass the customer."

50. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten[ action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

51. The Wisconsin Department of Financial Institutions, which is tasked with the regulation of licensed debt collectors, has found that "conduct which violates the Federal Fair

11

Case 2:20-cv-01115-PP   Filed 07/21/20   Page 11 of 14   Document 1

Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

## COUNT I – FDCPA

52. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

53. By including purported settlement offers ("OPPORTUNITY #2" and "OPPORTUNITY #3") which fail to specify the actual terms of the settlement, Exhibit A includes representations which are false, deceptive, misleading, and confusing as to whether the purported settlement would actually resolve Plaintiff's alleged debt.

54. Defendant violated 15 U.S.C. §§1692e and 1692e(10).

## COUNT II – WCA

55. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

56. By including a settlement offer without an expiration date while stating: "We are not required to make this arrangement to you in the future," Exhibit A threatens to take an action which Convergent did not intend to take.

57. By including purported settlement offers ("OPPORTUNITY #2" and "OPPORTUNITY #3") which fails to specify the actual terms of the settlement, Exhibit A violates the FDCPA.

58. Defendant is licensed as a collection agency by the Division of Banking in the Wisconsin Department of Financial Institutions.

59. Defendant violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## COUNT III – FDCPA

60. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

61. By stating "NOTICE: PLEASE SEE REVERSE SIDE AS IT MAY CONTAIN IMPORTANT CONSUMER INFORMATION," when the reverse side of the letter is actually entirely blank, Exhibit B includes representations which are false, deceptive, and misleading.

62. Defendant violated 15 U.S.C. §§1692e and 1692e(10).

## CLASS ALLEGATIONS

63. Plaintiff brings this action on behalf of two proposed classes.

64. Class I consists of (a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the form represented by Exhibit A to the Complaint in this action, (c) between July 21, 2019 and July 21, 2020, inclusive, (e) not returned by the postal service.

65. Class II consists of (a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the form represented by Exhibit B to the Complaint in this action, (c) between July 21, 2019 and July 21, 2020, inclusive, (e) not returned by the postal service.

66. Each Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each Class.

67. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant violated the FDCPA and/or the WCA.

68. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

69. Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

70. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

71. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: July 21, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com